Wilson *v.* Williams.

4-4689

Opinion delivered June 14, 1937.

W. F. *Norrell* and *Coleman & Riddick*, for appellant.

*Rowell, Rowell & Dickey,* for appellee.

Griffin Smith, C. J. This appeal is from an order of the Drew chancery court designated ''Judgment on Motion to Vacate Decree,'' entered January 27, 1937. The decree which the judgment vacates was rendered June 22, 1936, at a prior term. The only questions presented are whether the chancellor had the right to vacate the former decree; or, in the alternative, if such right existed, did the chancellor abuse his discretion in so doing?

In the vacating order, the chancellor stated that action on the motion was continued from the preceding term under the belief that there were other matters affecting the proceedings which had not been disposed of. He found that this was not true, but on the contrary all matters of controversy had been adjudicated, and the decree of June 22 was final.

The court further found that, having lost control of the litigation through lapse of the term, jurisdiction could not be reasserted under the provisions of § 6290 of Crawford & Moses' Digest for the reason, as expressed, that ''It is patent upon the face of all the pleadings that the remedy is not available.'' The court then found that a bill of review would lie, ''the object of which is to procure the reversal, alteration, or explanation, of a decree made in a former trial,'' and that allowance of the writ rested in the sound discretion of the court ''to be exercised cautiously and sparingly and only under circumstances which render it indispensable to the merits and justice of the cause.''

In the order vacating the decree the chancellor treated the motion as a bill of review, saying: "Our court seems wedded to limiting such bills to errors of law which are apparent on the face of the decree, or on account of new facts discovered since the decree was rendered. But the appellate court has not said that where, under circumstances attending the progress of this cause, proponents have been denied substantial rights under the law, the ancient power of equity to grant relief may not be invoked by the equitable remedy, of a bill of review."

The original complaint, filed February 13, 1936, was an action by the Union Bank & Trust Company of Monticello, as executor of the estate of H. M. Wilson and as trustee of the trust created by his will, against Mack Calhoun and others, being the beneficiaries under the will of H. M. Wilson, all of the heirs of H. M. Wilson, and Fannie B. Wilson, the widow of H. M. Wilson. The complaint embraced two distinct causes of action: one to procure construction of certain portions of the will; the other to secure adjudication of title to securities which Fannie B. Wilson claimed as tenant by the entirety. It was alleged that heirs of H. M. Wilson had questioned that an estate by the entirety had been created, or challenged validity of the instrument creating it.

On February 14, the day after the complaint was filed, the heirs of John B. Wilson, appellees here, and nieces and nephews of M. H. Wilson, filed an intervention in the cause in which they concurred in the purposes of the complaint with reference to both causes of action set forth therein. The intervention contained, among other things, the following: "The interveners concur in the bill in equity to construe the will filed by the Union Bank & Trust Company, except in the particulars hereinafter set forth.

"In order to enable the court to properly construe the intention of the testator, H. M. Wilson, they ask that item X be so construed as to determine the validity of any transfer of property thereunder creating a tenancy by the entirety."

Item X of the will is in part as follows: "To my beloved wife, Fannie B. Wilson, I bequeath any and all of my right, title and interest in and to such household and kitchen furniture, utensils, adornments, goods and equipment as I may own, being used in our home or held for use in our home at the time of my death; and also any automobile which I may own at the time of my death. I make no other bequests or devise to my said beloved wife because she already owns as tenant by the entirety with me the homestead where we live and certain land connected therewith, and sufficient stocks and bonds and other personal property which is already hers as such tenant by the entirety, and in which my estate will have no further interest after my death, to amply provide for her comfort during the remainder of her life."

The heirs of Wilson did not file an answer to the Union Bank & Trust Company's complaint. They filed a formal intervention, in which they expressly asked the court "to determine the validity of any transfer of property" by H. M. Wilson creating an estate by the entirety.

An adjourned term of court was held March 16, 1936. It was not attended by the attorney for the heirs of John B. Wilson. Adjournment was taken until April 16, and the record shows that Adrian Williamson, attorney for the Union Bank & Trust Company, wrote R. W. Wilson, attorney for the John B. Wilson heirs, advising R. W. Wilson of such adjournment, and that on April 16 the court would convene for the purpose of hearing and disposing of litigation incident to the will.

When the court met on April 16, counsel for all parties appeared, and the issues involved were argued. According to the testimony of Adrian Williamson, R. W. Wilson stated that he was not ready to complete the hearing at that time, but desired to inspect the stocks and bonds, and the court adjourned until June 8 for a further hearing.

At the request of the attorney for the heirs, all the stocks and bonds were sent to the Union Bank & Trust Company at Monticello for R. W. Wilson's inspection, and he examined them on May 1. There is testimony

that R. W. Wilson stated on several occasions that he did not know whether his clients wanted to contest Mrs. Fannie B. Wilson's claim to the stocks and bonds, and it is admitted by appellant that he did not indicate what their attitude would be at the time he finished the inspection.

On May 1, Williamson wrote Wilson as follows: "This afternoon we had no definite understanding as to the next step to be taken in connection with the personal property which the executor understands to have been owned by H. M. Wilson and Fannie B. Wilson, his wife, as tenants by the entirety with right of survivorship at the time of Mr. Wilson's death, and to be therefore now owned by Mrs. Fannie B. Wilson, being the securities which you inspected this afternoon.

"In case you wish to raise any further question on this point, as to any of the securities in question, please notify us just as soon as practicable so that the executor or Mrs. Wilson can begin to take proof as speedily as possible and get the matter in shape for final adjudication in June."

Williamson, also, wrote to R. W. Williford, at Wortham, Texas, as attorney for W. M. Wilson, and to DeWitt Poe, at McGehee, as attorney for Mrs. Ella McQuistion, and each replied that he did not care to controvert Mrs. Fannie B. Wilson's claim to the securities.

Williamson testified that shortly after May 1, he again urged R. W. Wilson to let him know whether or not be desired to take any testimony or otherwise participate in the adjudication of the issue as to Mrs. Fannie B. Wilson's claim as surviving tenant, and that Wilson said he would let him know in a short time whether he desired to take any proof on that issue.

The court met again on June 8, 1936, and heard additional arguments as to the proper construction of the will. The court decided certain of the issues, and according to Williamson's testimony, R. W. Wilson announced that he was not then ready to say whether he cared to contest Mrs. Fannie B. Wilson's claim, and

the court continued that matter at his request until June 22.

Williamson says that prior to June 22, he called Wilson over the telephone and asked if he had determined whether his clients cared to question title to the stocks and bonds. Wilson replied that he did not care to do so at that time. Williamson says that because of uncertainty as to R. W. Wilson's intentions he suggested to Mrs. Fannie B. Wilson that she employ a lawyer to represent her, for the reason that he (Williamson) represented the bank and could not serve in a dual capacity. She employed W. F. Norrell, and Norrell filed an answer and cross-complaint on June 22. This pleading was identical with an answer and cross-complaint filed by appellant on June 17, *pro se.*

When the court met on June 22, Wilson appeared for the John B. Wilson heirs; Norrell appeared for Mrs. Fannie B. Wilson, and Adrian Williamson appeared for the bank. Williamson says he told R. W. Wilson, and, also, announced to the court, that it was imperative that the claim of Mrs. Fannie B. Wilson be finally adjudicated that day, because H. M. Wilson had died on June 29, 1935, and it only lacked a few days until the period of a year in which the widow had a right to claim a dower interest in the estate would expire. Williamson testified:

"I asked Mr. Wilson again whether he cared to be present at the hearing of that issue. He indicated that he was not interested. Mr. R. L. Hyatt, vice-president of the Union Bank & Trust Company, who handles all trust matters for the bank, was called to the courthouse to testify, and to introduce in evidence the original signed document whereby the personal property in question had been assigned and delivered to H. M. Wilson and Fannie B. Wilson, husband and wife, as tenants by the entirety.

"Mr. Hyatt came into the court room while Mr. Wilson was there, and I remember telling Mr. Wilson that I was going to take some testimony, and he appeared to be irritated, and asked why I was doing so,

inasmuch as he was not raising any objection as to the title of Mrs. Wilson to this property.

"Mr. Wilson, got his hat and brief case and walked out of the room. It was only a few minutes after that before the court was ready to hear us, and I remember going down stairs and to the front door in order to again advise him that we were about ready to take the matter up, but he had left the courthouse, at least I did not see him. The matter was then presented to the court."

After hearing the testimony, the court rendered a final decree, adjudicating that Mrs. Fannie B. Wilson was the owner of the stocks and bonds as surviving tenant by the entirety, and was entitled to the possession of them.

It is insisted by appellees that they were not prepared to meet the issues raised in the answers and cross-complaints filed by appellant on June 17 and June 22; that, as a matter of law, issues between the parties were not drawn until June 22; that the heirs of John B. Wilson lived in different states and were inaccessible; that the testimony of Adrian Williamson, representing the Union Bank & Trust Company, was not antagonistic to the interests of appellant, and indicated a willingness to help her; that the decree was rendered the same day appellant's answer and cross-complaint were filed by Senator Norrell, and was necessarily predicated upon Williamson's testimony. It is also contended that appellees have a meritorious defense, but the nature of this defense was not mentioned, nor was any evidence offered in support of such defense.

In reviewing the case, it should be remembered that the Union Bank & Trust Company's suit was filed February 13, of which all parties in due course had notice. In the final judgment on motion to vacate, the chancellor, after referring to the original complaint, found that the John B. Wilson heirs had answered on February 14, 1936, and had joined in the prayer to construe the will and determine the validity of the estate by the entirety; that Mrs. Fannie B. Wilson filed an answer and cross-complaint on June 17, asserting her title to the property

in question; that on June 22, the court heard evidence and entered its decree adjudicating the estate by the entirety to be valid; that on May 1, attorney for the heirs of John B. Wilson had inspected stocks and bonds included within the estate by the entirety; that on June 22, 129 days had elapsed since the filing of the original bill; that it was the duty of the court to decide the case upon that day, and that a decision would have been made even though Mrs. Wilson had filed no pleadings.

The court further found that on the 14th of September, the John B. Wilson heirs filed a motion to vacate the decree of June 22; that the John B. Wilson heirs were the same parties who had filed the pleading on February 14, asking the court to adjudicate the validity of the estate by the entirety; that the answer filed by Mrs. Fannie B. Wilson raised no new issue in the case; that there was no necessity for her pleading, but that nevertheless her answer may have constituted the initial plea in the case with reference to the validity of the estate by the entirety; that the motion to vacate the decree was filed on the last day of the June term of court and was continued by the court under the mistaken belief that there were other matters affecting the issues not disposed of; but that all issues had been finally adjudicated in the decree of June 22.

The history of this case is set out at length that there may be an understanding of all the steps taken by litigants and their attorneys.

If the contentions of appellees are to be maintained, there must be a finding that appellant's answers and cross-complaints injected new matter into the proceedings. To this proposition we cannot assent. It is our opinion that the issues were made up when the heirs of John B. Wilson answered on February 14. It is true that in her answer and cross-complaint appellant claimed title to certain property, but identical allegations were made in the complaint of February 13, and the chancellor found that there could have been full adjudication if appellant's pleadings had not been filed, and the issue was determined in appellant's favor.

The record is impressive in that from February to June the most meticulous consideration was extended by appellant and those representing her. It is apparent that nothing suggestive of fraud or concealment entered into the negotiations or into the legal relationships.

It is the holding of this court, therefore, that allegations in the bill of review were insufficient to justify the chancellor in vacating the original decree; that such decree contained appropriate findings and the law was correctly declared, and that the order vacating it should be vacated and the original decree reinstated. It is so ordered.